UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANIEL MCCABE, et al., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 23-10829-FDS |
| FORD MOTOR COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S RENEWED
MOTION TO DISMISS PLAINTIFF JEFFREY POLLACK'S CHAPTER 93A CLAIM**

**SAYLOR, J.**

This is a consolidated set of putative class actions alleging defects in the transmissions of certain Ford vehicles. Before the Court is defendant's renewed motion to dismiss the claim of plaintiff Jeffrey Pollack under Mass. Gen. Laws ch. 93A. For the reasons set forth below, the motion will be granted.

**I.   Background**

   **A.   Factual Background**

The facts are set forth as alleged in the Amended Consolidated Complaint ("ACC") (Dkt. No. 104).

   **1.   Class-Wide Allegations**

According to the complaint, plaintiffs are consumers who purchased or leased vehicles designed and manufactured by defendant Ford Motor Company equipped with a 10R80 10-speed transmission. (ACC ¶¶ 35-73). Plaintiffs represent putative classes of consumers in nine

states—Massachusetts, Florida, Alabama, Illinois, Texas, New York, California, Oklahoma, and Pennsylvania.

The complaint alleges that when Ford first introduced the 10R80 transmission in the 2017 F-150, it "advertised the 'improved acceleration and performance' and 'enhanced shifting performance' offered by the Transmission." (*Id.* ¶ 83). Ford also described the transmission as "innovative" and "class-exclusive," advertising its "responsiveness and all-around performance." (*Id.* ¶¶ 94, 119).

According to the complaint, however, the transmission did not live up to Ford's representations. It alleges that vehicles equipped with the transmission "slip gears, hesitate, jerk, lunge, clunk, and/or shift roughly." (*Id.* ¶ 132). It further alleges that "[s]ome consumers have reported that their Vehicle loses power while accelerating, including onto a freeway or through an intersection, when the Transmission failed to shift up or down." (*Id.*). As a result, drivers have "reported whiplash and discomfort due to harsh shifting," "distraction from driving due to loud and unusual sounds," "concerns about reliability," and "that they do not feel safe driving [their vehicles] in normal traffic conditions." (*Id.* ¶¶ 133-34).

According to the complaint, "[s]ince the 10R80 transmission was introduced . . . drivers have repeatedly complained to Ford about problematic shifting, including Vehicles lunging, jerking, hesitating, clunking, and otherwise shifting erratically." (*Id.* ¶ 677). It alleges that numerous complaints filed with the National Highway Transportation Safety Administration demonstrate that the defects with the 10R80 are "widespread." (*Id.* ¶ 558).

The vehicles in question are covered by Ford's "New Vehicle Limited Warranty," which provides that (subject to certain limitations, such as time and mileage) Ford will repair or replace any defective parts. (*Id.* ¶ 846). An owner or lessor seeking repairs under the warranty must

2

satisfy two preconditions: the vehicle must (1) be "properly operated and maintained" and (2) "taken to a Ford dealership for a warranted repair during the warranty period." (Def. Mem. Exs. 1-7 ("Warranties") at 8-9, Dkt. No. 107).[1] At that point, the "authorized Ford Motor Company dealer[] will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." (*Id.* at 9).

In March 2018, Ford issued its first of several "Technical Service Bulletins" ("TSBs"), instructing technicians on how to address "harsh or delayed shifts" in vehicles equipped with 10R80 transmissions. (ACC ¶¶ 680, 685). The complaint alleges that these TSBs "reflected knowledge of the Defect that Ford had maintained throughout the design and testing of the 10-speed Transmission, prior to its first sale to consumers." (*Id.* ¶ 686). Ford released further TSBs and "Special Service Messages" ("SSMs") between 2018 and 2024 addressing issues with the 10R80. (*Id.* ¶¶ 679-716). The complaint alleges that these "recommendations fail to remedy the [10R80]'s shifting problems reported in Class Vehicles." (*Id.* ¶ 716).

The complaint alleges that from 2017 to the present, Ford "has misrepresented the safety, performance and reliability of the 10R80 . . . through its website, multimedia advertisements, brochures, and in-person statements by its employees, authorized dealers, agents, sales representatives and/or repair technicians." (*Id.* ¶ 721). According to the complaint, Ford has characterized the purported defect with the 10R80 as "'normal,' or simply a limited period of adjustment and adaptation." (*Id.* ¶ 741). Although Ford allegedly knew about the defect with

---

[1] The warranties themselves are described in, and central to, the ACC. (*See, e.g.*, ACC ¶¶ 128-31, 809). Thus, the Court is permitted to, and has, considered them in deciding the motion to dismiss. *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

3

the 10R80, it "has allowed Plaintiffs and Class Members to continue to drive the Class Vehicles," "has not recalled the [v]ehicles," and "has not offered to reimburse [v]ehicle owners and lessees who incurred costs in an attempt to address [transmission problems] . . . [or] for any diminished value of their [v]ehicles resulting from the [d]efect." (*Id.* ¶¶ 744, 746-48).

The complaint alleges that plaintiffs "have not received the benefit for which they bargained when they purchased or leased the Class Vehicles," and "the value of the Class Vehicles has diminished." (*Id.* ¶¶ 751-52).

### 2. **Allegations as to Jeffrey Pollack**

In April 2023, Jeffrey Pollack purchased a 2023 Ford F-150, and in May 2023 he purchased a 2022 Ford Mustang, both of which were equipped with a 10R80 transmission. (*Id.* ¶ 158).

The complaint alleges that "Ford knew that its 10-speed automatic [t]ransmissions were defective, but neither Ford, the Ford sales representative, nor any other Ford representative disclosed the [d]efect to Mr. Pollack when advertising or discussing the features, components, and performance of the [v]ehicles prior to their sale," and that "[i]n reliance on th[o]se material omissions and misrepresentations, Mr. Pollack purchased and operated the [v]ehicles on the reasonable but incorrect belief that the [v]ehicles' [t]ransmissions would operate properly as warranted." (*Id.* ¶ 160). According to the complaint, "[p]rior to purchasing his F-150, a Ford employee informed Pollack regarding its new [t]ransmission, highlighting the fuel economy, smooth shifting and towing package associated with the 10-speed transmission." (*Id.* ¶ 161).

The complaint alleges that "[a]lmost immediately upon purchasing the [v]ehicles," Pollack "started to notice . . . the [t]ransmission . . . shift[ing] very hard, and erratically between gears, 'slamming' between gears, as well as lunging, hesitating, and being 'constantly confused about what gear it should be in.'" (*Id.* ¶ 182). He allegedly had a similar experience with his

Mustang, and "regularly experiences complete loss of power in his F-150 while trying to accelerate at highway speeds." (*Id.* ¶¶ 162, 64). As a result of these issues, the complaint alleges that Pollack now avoids driving his F-150 whenever possible, has gotten rid of his Mustang, and "did not receive the benefit of his bargains." (*Id.* ¶¶ 163, 166, 170).

### B. Procedural Background

Following an initial complaint filed by plaintiff McCabe and the filing of a motion to dismiss by Ford, plaintiffs amended the complaint on June 23, 2023, adding additional Massachusetts plaintiffs Wright and Pollack. Ford moved to dismiss that complaint, which the Court granted in part and denied in part. Specifically, the Court granted the motion as to claims for breach of express warranty; breach of the implied warranty of fitness; violation of the Magnusson-Moss Warranty Act ("MMWA"); negligence; unjust enrichment; and fraudulent omission, and denied it as to the claims for breach of the implied warranty of merchantability; fraudulent misrepresentation; and violation of Chapter 93A.

By that point, plaintiffs' counsel had filed eight other putative class actions concerning the 10R80. On April 12, 2024, those actions were consolidated with the action filed by the Massachusetts plaintiffs. On June 14, 2024, plaintiffs filed the operative consolidated complaint, which asserts claims pleaded on behalf of 46 individual named plaintiffs—including an additional Massachusetts plaintiff, Ron San Angelo—and on behalf of "all similarly situated persons . . . who purchased or leased a Ford vehicle equipped with a 10R80 10-speed transmission . . . ." (ACC ¶ 2). As relevant here, the consolidated complaint asserts claims for breach of the implied warranty of merchantability (Count 2); fraud and fraudulent concealment (Count 5); and violation of Mass. Gen. Laws ch. 93A (Count 6).

5

Ford then moved to dismiss a significant majority of the claims asserted in the ACC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2] Because the Court had previously declined to dismiss the claims of the original Massachusetts plaintiffs for fraudulent misrepresentation, Ford did not again move to dismiss those claims. However, it did move to dismiss the fraudulent-misrepresentation claim of the newly added Massachusetts plaintiff, San Angelo.

The Court granted that motion. In doing so, the Court noted that it had "reason to doubt whether the ACC sufficiently pleads actual reliance by Pollack on any particular, actionable representation." *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 390 (D. Mass. 2025). Thus, the Court decided to "give defendant an opportunity to file a renewed motion to dismiss as to Pollack." (*Id.*). The Court also dismissed the Chapter 93A claim of San Angelo, finding that it was derivative of his failed claim for fraudulent misrepresentation, and thus provided defendant an opportunity to file a renewed motion to dismiss the Chapter 93A claim as well.

On April 28, 2025, the parties filed a joint stipulation of dismissal with prejudice as to Pollack's claim for fraudulent misrepresentation under Fed. R. Civ. P. 41(a)(1)(A)(ii). That claim is, therefore, dismissed. Ford then filed a renewed motion to dismiss the Chapter 93A claim as to Pollack.

## II.  Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

---

[2] A motion to compel arbitration was also litigated and ruled upon, but it was not directed at Pollack and is thus irrelevant to his claims.

6

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.    Analysis**

Ford contends that the claim of plaintiff Pollack under Chapter 93A should be dismissed for the same reasons that the Court dismissed that of plaintiff San Angelo.  In substance, the Chapter 93A claim of plaintiff San Angelo was dismissed because the Court found that it was derivative of his insufficiently stated claim for fraudulent misrepresentation, and "[t]he SJC has clearly articulated the standard that if a Chapter 93A claim is 'derivative of' other claims which fail as a matter of law, the Chapter 93A claim 'must also fail.'"  *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) (quoting *Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 85-86 (2004)).  There are no material factual distinctions between the alleged circumstances of San Angelo and Pollack that would prevent the same reasoning from applying to both plaintiffs' claims—and, in any event, Pollack has now stipulated to the dismissal of his claim for fraudulent misrepresentation.

However, Pollack has now taken the opportunity of renewed briefing to raise two

arguments against dismissal that were not raised in opposition to the prior motion to dismiss: (1) that his Chapter 93A claim has been sufficiently pleaded as an independent cause of action and (2) that his Chapter 93A claim should survive as derivative of his claim for breach of the implied warranty of merchantability, which has not been dismissed.

### A. Chapter 93A Claim as Independent Cause of Action

Regardless of whether it is entirely or only partially derivative of his fraud claims, Pollack's Chapter 93A claim does not stand independently. The complaint does not allege unique facts in support of that claim. Instead it "describes a course of conduct by . . . defendant[] identical to that supporting" the other claims in the complaint. *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024). Nor does it set forth a unique "economic theory of injury." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 634 (2008). In other words, if the other claims of the complaint were to be dismissed, nothing would remain to support the Chapter 93A claim.

### B. Chapter 93A Claim as Derivative of Implied Warranty Claim

It is undisputed that the Chapter 93A claim of plaintiff Pollack is substantially derivative of his misrepresentation claims, which have been dismissed. However, Pollack contends that the claim is also partially derivative of his implied-warranty claim, which has not.

Ford contends that in prior briefing, plaintiffs conceded that the Chapter 93A claim of Pollack is entirely derivative of his fraud claims. It cites the following statement from plaintiffs' opposition to Ford's motion to dismiss the ACC:

> Plaintiffs agree that the [Chapter] 93A claims are based on the same conduct alleged in their misrepresentation and fraudulent omission claims, but these claims are properly set forth properly in the [ACC]. . . . Because those claims survive, [p]laintiffs' derivative 93A claim[] survives as well.

(Dkt. No. 113, at 52).[3] In response, Pollack contends that in that statement, "[p]laintiffs merely agreed that Ford's alleged conduct applied to both [p]laintiffs' fraud and Ch[apter] 93A claims, not that the Massachusetts [p]laintiffs' Ch[apter] 93A claim was *entirely* derivative of their fraud claims." (Opp'n at 4, Dkt. No. 146) (emphasis added). Ford characterizes that argument as "merely *post hoc* justification[] intended to avoid the natural effect of the Court's second [Motion to Dismiss] order." (Reply at 3, Dkt. No.147). The Court agrees that plaintiffs' concession is sufficient to dispose of the issue; plaintiffs are not permitted to shift their theories of recovery at will to attempt to avoid the impact of adverse legal rulings. Nonetheless, the Court will consider the issue on the merits.

It is an open question whether, under Massachusetts law, a Chapter 93A claim can be derivative of an implied-warranty claim, without more. The Supreme Judicial Court has permitted claims under Chapter 93A where they were derivative of both an implied-warranty claim and a negligence claim. *See Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 465 n.25 (2013) ("In *Maillet v. ATF–Davidson Co.*, 407 Mass. 185, 190 (1990), we concluded that joint findings of breach of the implied warranty of merchantability and negligence are legally sufficient to constitute a violation of G.L. c. 93A, § 2. Because we are remanding the case, we decline, as we did in *Maillet*, to decide whether liability should be 'imposed automatically under G.L. c. 93A whenever a defendant has violated the warranty of merchantability,' even where there is no finding of negligence. *See id.*"); *see also Glyptal Inc. v. Engelhard Corp.*, 801 F. Supp. 887, 899 (D. Mass. 1992) (stating that "[b]reaches of express and implied warranties constitute a virtual per se violation of [Chapter 93A]") (citing *Maillet*, 407 Mass. at 193).

---

[3] Those two sentences represent the totality of plaintiffs' briefing on the matter prior to its present opposition to the renewed motion to dismiss.

In any event, this Court need not decide the issue, because the complaint here does not allege a violation of Chapter 93A arising out of a breach of implied warranty. The Chapter 93A violation alleged in the complaint is clearly based on allegations of misrepresentation and fraud, with a passing reference to breach of express warranty. (ACC ¶ 897-915). The closest the complaint comes to suggesting that the Chapter 93A claim derives in part from a breach of implied warranty is set forth in ¶ 913:

> Plaintiffs and Massachusetts Subclass Members reasonably relied on Ford's misrepresentations and omissions and expected that the Class Vehicles would not be equipped with a defective 10R80 10-speed automatic transmission, such that it would render the Class Vehicles unsafe and not fit for their ordinary use. Further, Plaintiffs and Massachusetts Subclass Members reasonably expected Ford would honor its warranty obligations, as represented to them at the time they purchased or leased their Class Vehicles.

(*Id.* ¶ 913). It is true that the phrase "not fit for ordinary use" echoes language that is normally seen in claims for breach of implied warranty of merchantability. However, that phrase is used in the context of a paragraph that, read as a whole, plainly asserts allegations of fraud (plaintiffs "reasonably relied on Ford's misrepresentations and omissions"). Those claims, as noted, have been dismissed. The phrase "breach of implied warranty of merchantability" is not used anywhere in the paragraph. And while there is a reference to "warranty obligations," it clearly refers to *express* warranty obligations ("as represented to them"), not implied obligations. And the express warranty claims have been dismissed, as well.

In short, the complaint alleges a Chapter 93A claim that is derivative of claims for misrepresentation and breach of express warranty that have failed as a matter of law and have been dismissed, either by the Court or by stipulation. Because the Chapter 93A claim cannot stand independently, it will also be dismissed.

10

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss the claim of plaintiff Jeffrey Pollack under Mass. Gen. Laws ch. 93A (Count 6) is GRANTED.

**So Ordered.**

Dated:  January 30, 2026

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge