**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| DANIEL MCCABE, et al., individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | 23-10829-FDS |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION FOR PARTIAL DENIAL OF CLASS CERTFICIATION**

**SAYLOR, J.**

This is a consolidated set of putative class actions alleging defects in the transmissions of certain Ford vehicles. Defendant Ford Motor Company has moved for partial denial of class certification.

Plaintiffs have brought suit against defendant Ford Motor Company. They represent putative classes of purchasers and lessees of Ford vehicles equipped with a 10R80 10-speed automatic transmission. As relevant here, the consolidated complaint asserts claims for (1) violation of the Alabama Deceptive Trade Practices Act ("ADTPA") by Alabama plaintiffs (Count 8) and (2) breach of the implied warranty of merchantability by Texas, Pennsylvania, California, and Massachusetts plaintiffs (Counts 2 and 4).

Defendant seeks to deny class certification as to those claims. First, it contends that the ADTPA's express bar on class actions should be enforced in federal court. Second, it contends that a class of plaintiffs cannot be certified as to the implied-warranty claims because the express

warranty included with each class vehicle contained a class-action waiver for "any warranty-related claim."  For the reasons set forth below, the motion will denied on both grounds.

I.    **Background**

Plaintiffs are consumers who purchased or leased vehicles designed and manufactured by defendant Ford Motor Company equipped with a 10R80 10-speed transmission.  (Dkt. No. 104 ¶¶ 35-73).  Plaintiffs represent putative classes of consumers in nine states—Alabama, California, Florida, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, and Texas.

On June 14, 2024, plaintiffs filed the operative consolidated complaint.  It alleges that Ford's 10R80 10-speed transmission "can shift harshly and erratically, causing the vehicle to jerk, lunge, clunk, and hesitate between gears."  (*Id.* ¶ 4).  The vehicles in question are covered by Ford's "New Vehicle Limited Warranty" ("NVLW"), which provides that (subject to certain limitations, such as time and mileage) Ford will repair or replace any defective part.  (*Id*. ¶ 846).  The complaint asserts that the NVLW "was made part of the basis of the bargain when Plaintiffs and Class Members bought or leased the Class Vehicles."  (*Id.* ¶¶ 809, 851).

The complaint alleges that because the transmissions are faulty, plaintiffs "have not received the benefit for which they bargained when they purchased or leased the Class Vehicles," and "the value of the Class Vehicles has diminished."  (*Id.* ¶¶ 751-52).  It asserts claims for breach of express warranty under the NVLW; breach of the implied warranty of merchantability; fraud and fraudulent concealment; and violations of the trade and consumer-protection laws of various states.

Ford previously moved to dismiss a significant majority of the claims asserted in the consolidated complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 106).  It also moved to compel arbitration for a

number of plaintiffs.  (Dkt. No. 116).  The Court granted the motions as to most claims and for most plaintiffs.  (Dkt. Nos. 136, 137).  As a consequence, a claim for violation of the ADTPA is the single remaining claim asserted by Alabama plaintiffs.  Claims for breach of the implied warranty of merchantability remain for plaintiffs from Texas, Pennsylvania, California, and Massachusetts.

On August 22, 2025, defendant moved for partial denial of class certification of (1) the claims of the Alabama plaintiffs and (2) the implied-warranty claims of plaintiffs from the four remaining states.  (Dkt. No. 152).  Defendant frames its motion as authorized by Federal Rule of Civil Procedure 23(d)(1)(D).  (Dkt. No. 153, at 4).  Plaintiffs have not yet moved to certify a class.

## II.    <u>Standard of Review</u>

A court must determine whether to certify a class "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  Rule 23 does not grant plaintiffs control over the timing of class certification, and defendants may raise the issue before plaintiffs.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).  Accordingly, "[t]wo Federal Rules of Civil Procedure authorize the court to strike a class allegation at the pleading stage." *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 268 (D. Mass. 2017).  First, Rule 23(d)(1)(D) authorizes a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Second, "district courts [may] use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations."  *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).

Defendant has moved to deny class certification, invoking Rule 23(d)(1)(D). (Dkt. No. 153, at 4). In practice, courts treat such motions and motions to strike class allegations under Rule 12(f) similarly. *See* 2 J. MOORE, MOORE'S FEDERAL PRACTICE § 12.37 (2026). Indeed, defendant relies on cases that analyze Rule 12(f). (Dkt. No. 153, at 4 (citing *Manning*, 725 F.3d at 59)).

Under both rules, a court may strike a class allegation "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning*, 725 F.3d at 59; *see Monteferrante*, 241 F. Supp. 3d at 269. The First Circuit, however, counsels caution. *Manning*, 725 F.3d at 59. Striking a class allegation is a "drastic" and "disfavored" remedy because it "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (citation modified). Consequently, "[a] court should typically await the development of a factual record before determining whether the case should move forward on a representative basis." *Id.*

## III.    **Alabama Class**

The single remaining claim for the Alabama class is for violation of the ADTPA. That statute contains an express class-action bar. It provides:

> A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter.

Ala. Code § 8-19-10(f) (2026).

Defendant contends that plaintiffs cannot certify an Alabama class because of the state-law statutory bar.  The question before the Court is whether that state law applies in this federal proceeding.

Under the Rules of Decision Act, federal courts sitting in diversity are directed to apply state law "except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide."  28 U.S.C. § 1652.  The Rules Enabling Act, in turn, authorizes the Supreme Court to adopt Federal Rules of Civil Procedure so long as "[s]uch rules . . . do not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, the Supreme Court established a two-part framework for determining whether a federal court sitting in diversity should apply a Federal Rule of Civil Procedure or state law.  559 U.S. 393, 398 (2010) (majority opinion).[1]  Under that framework, the federal rule governs if it (1) displaces the state law and (2) does not violate the Rules Enabling Act.  *See id.*

In *Shady Grove*, the Supreme Court held that Rule 23 displaced a New York state law prohibiting class actions in suits seeking penalties or statutory minimum damages.  *Id.* at 396. While the reasoning differed, five justices also held that Rule 23 does not violate the Rules Enabling Act.  *See Shady Grove*, 559 U.S. at 408 (plurality opinion); *id.* at 436 (Stevens, J., concurring in part and concurring in the judgment).

Defendant nonetheless contends that in the present case the application of Rule 23 would, in fact, violate the Rules Enabling Act.  It asks the Court to apply the test from Justice Stevens's concurrence, which "turns, in part, on the nature of the state law that is being displaced."  *Id.* at

---

[1] *Shady Grove* is a fractured opinion.  Nonetheless, Parts I and II-A—which lay out the two-part framework and analyze whether a federal rule displaces state law—were joined by five Justices.  *Shady Grove*, 559 U.S. at 395-406.

419 (Stevens, J., concurring in part and concurring in the judgment).  Indeed, the First Circuit has applied the test from Justice Stevens's concurrence, *see Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010), and plaintiffs conceded that his concurrence controls this case.  (Dkt. No. 155, at 2).

However, *Berk v. Choy*, decided in January 2026 after the briefing on this motion, clarified that the test in the *Shady Grove* plurality opinion, not the test in the Justice Stevens concurrence, controls.  146 S. Ct. 546, 551 (2026).  Significantly, that test does not consider the nature of displaced state law at all.  As the Supreme Court explained:

> For purposes of the Rules Enabling Act, we use a modest test:  whether the Federal Rule "really regulates procedure."  *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941).  Or put differently, "[w]hat matters is what the Rule itself *regulates*:  If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid."  *Shady Grove*, 559 U.S., at 407 (plurality opinion) (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).
>
>  . . .
>
> Defendants . . . argue that determining whether a Rule is valid under the Rules Enabling Act requires asking a second question:  whether *the displaced state law* is substantive.  We rejected that approach eight decades ago and decline to reconsider it now.  See *Sibbach*, 312 U.S., at 14.  On the contrary, we underscore that "the substantive nature of [a state] law, or its substantive purpose, *makes no difference*."  *Shady Grove*, 559 U.S., at 409 (plurality opinion).  To determine whether a Rule is valid under the Rules Enabling Act, the only question is whether it "really regulates procedure."  *Sibbach*, 312 U.S., at 14.

*Id.* at 556-57 (emphasis and alteration in original).  That opinion, unlike the plurality in *Shady Grove*, garnered the support of at least eight Justices.[2]  The Supreme Court was clear:  whether a state law is substantive "makes no difference" to whether a federal rule is valid under the Rules Enabling Act.  *Id.* at 557.

---

[2] Justice Jackson concurred in the judgment.  She disagreed with the majority over which federal rule directly conflicted with the state requirement.  *Berk*, 146 S. Ct. at 557 (Jackson, J., concurring in the judgment).  However, she appeared to agree with the majority's analysis of the Rules Enabling Act.  *See id*. at 558 ("And for similar reasons to those given in Part II-B of the majority opinion, Rule 3 easily satisfies this standard.").

Read together, *Berk v. Choy* and *Shady Grove* squarely resolve the question of whether Rule 23 applies in federal court notwithstanding a state law class-action bar. It does, and therefore the Alabama class-action bar is unenforceable in this action. The Court will deny defendant's request to deny certification of the Alabama class on that ground.

## IV.    Breach of the Implied Warranty of Merchantability Claims

Defendant also seeks to enforce the class-action waiver of the NVLW to the remaining implied-warranty claims. Plaintiffs raise several reasons as to why the waiver does not apply: (1) that the NVLW is not enforceable, (2) that the waiver does not encompass implied-warranty claims arising by operation of law, and (3) that it is premature to decide whether such a waiver is unconscionable under the various state laws. The Court will address each issue in turn.

### A.    Enforceability of the NVLW Against Plaintiffs

First, plaintiffs contend that defendant failed to establish that plaintiffs are bound by the waiver. They "dispute that they received or had the opportunity to review the Waiver prior to executing their purchase documents" and contend that they cannot be bound by terms to which they did not agree. (Dkt. No. 155, at 15).

Defendant responds that plaintiffs' own pleadings concede that the NVLW, which includes the waiver, is enforceable. The consolidated complaint pleads claims for breach of express warranty based upon the NVLW. (Dkt. No. 104 ¶¶ 800-817, 839-58). In support of those claims, the complaint alleges that "[t]he New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiffs and Class Members bought or leased the Class Vehicles." (*Id.* ¶¶ 809, 851). Furthermore, the complaint quotes from the NVLW and includes links to it. (*Id.* ¶¶ 8 & n.1, 128 & n.22-26, 807 & n.77). Notably, the complaint does

not allege that express warranties were first made verbally and then memorialized in a writing delivered after purchase; the express-warranty claims rely on the terms of the NVLW.

Plaintiffs' admission in the complaint is dispositive. "[A]n 'assertion of fact in a pleading is a judicial admission by which [the pleader] normally is bound throughout the course of the proceeding,' so long as the pleader made that assertion 'clearly and unambiguously.'" *Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.*, 997 F.3d 367, 373 (1st Cir. 2021) (second alteration in original) (quoting *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992)). Furthermore, "[u]nlike ordinary admissions, which are admissible but can be rebutted by other evidence, judicial admissions are conclusive on the party making them." *Id.* (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)).

Here, plaintiffs "clearly and unambiguously" admitted that the NVLW was a valid and enforceable contract between the parties. The complaint expressly alleges (twice) that the NVLW was part of the basis of the bargain. The claims for breach of express warranty sought to enforce the NVLW against defendant. Moreover, the NVLW was repeatedly incorporated by reference into the complaint.

This is not a case where relief from judicial admission is warranted. Plaintiffs' admission "was not made in the context of an alternative or hypothetical pleading." *Schott Motorcycle Supply*, 976 F.2d at 62. Nor do considerations of fairness support granting relief. *See Belculfine*, 527 F.2d at 944 ("[C]onsiderations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in appropriate cases."). Plaintiffs sought to enforce the terms of the warranty against defendant. Having failed to do so, plaintiffs cannot reverse course and claim that there

8

was no enforceable contract.  By their judicial admission, plaintiffs are bound by the terms of the NVLW.

### B.        Waiver of Implied-Warranty Claims

Plaintiffs next contend that even if they are bound by the NVLW, the class-action waiver does not encompass implied warranties.  The implied-warranty claims (Counts 2 and 4) arise from operation of law.  They derive from the sale of the vehicle and exist independently from the NVLW.  *See* Tex. Bus. & Com. Code Ann. § 2.314; 13 Pa. Cons. Stat. § 2314; Cal. Com. Code § 2314; Mass. Gen. Laws ch. 106 § 2314 (Count 2) and Cal. Civ. Code §§ 1791.1 & 1792 (Count 4).  Plaintiffs maintain that the NVLW's waiver covers only the express warranties granted by the booklet.

That is a question of contract interpretation.  In Texas, Pennsylvania, California, and Massachusetts, contracts are interpreted according to their plain meaning.  *See Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 339 & n.22 (Tex. 2023) (Texas); *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 242 (Pa. 2024) (Pennsylvania); *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 537 (Cal. 2024) (California); *Psychemedics Corp. v. City of Bos.*, 486 Mass. 724, 741 (2021) (Massachusetts).[3]

The third section of the NVLW discusses the scope of coverage.  It begins with a sub-section entitled "LIMITATIONS AND DISCLAIMERS."  (Dkt. No. 153-2, at 5-7).[4]  In relevant part, it states:

> All of the warranties in this booklet are subject to the following limitations and
> disclaimers:

---

[3] The NVLW's choice-of-law provision provides that "[t]he warranties contained in this booklet and all questions regarding their enforceability and interpretation are governed by the law of the states in which you purchased your Ford vehicle."  (Dkt. No. 153-2, at 7).  The parties do not dispute that the law of the state where the vehicle was purchased governs.

[4] Ford issued different warranty guide for each model year.  Nonetheless, the warranty guides issued to the relevant plaintiffs are materially the same.  (Dkt. Nos. 153-2 to 153-9).

> The warranties in this booklet are the only express warranties applicable to your vehicle. . . .
>
> . . .
>
> You may not bring any warranty-related claim as a class representative, a private attorney general, a member of a class of claimants or in any other representative capacity.
>
> . . .
>
> You may have some implied warranties.  For example, you may have an implied warranty of merchantability (that the car or light truck is reasonably fit for the general purpose for which it was sold) or an implied warranty of fitness for a particular purpose (that the car or light truck is suitable for your special purposes), if a special purpose was specifically disclosed to Ford itself not merely to the dealer before your purchase, and Ford itself not just the dealer told you the vehicle would be suitable for that purpose.

(*Id.*).

Plaintiffs maintain that the "limitations and disclaimers" sub-section should be read sequentially—that is, that the first part of the sub-section (which includes the class-action waiver) covers express warranties and the second part covers implied warranties.

There is some support for that reading.  The sub-section begins by stating that "All of the warranties in this booklet [that is, express warranties] are subject to the following limitations and disclaimers: . . . "  Nine paragraphs later, and following the waiver, it states that there "may" also be implied warranties.  Standing alone, that organization seems to suggest that the waiver applies only to express warranties.

The actual language of the waiver itself, however, clearly applies more broadly.  The booklet provides that plaintiffs cannot bring "*any* warranty-*related* claim" as a class representative or class member.  (Dkt. No. 153-2, at 6 (emphasis added)).  Both "any" and "related" are broad terms.  *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning . . . ."); *Morales v. Trans World Airlines, Inc.*, 504 U.S.

10

374, 383 (1992) ("The ordinary meaning of [relating to] is a broad one . . . ."). In contrast, the booklet uses narrower language to refer to express warranties—both the term "express warranties" and the term "warranties contained in this booklet." Logically, "any warranty-related" claims must be broader than claims arising from "warranties in this booklet." Therefore, the waiver must encompass the only other kind of warranties mentioned in the sub-section—that is, implied warranties.

Other district courts addressing the same issue have found that the NVLW's waiver encompasses implied-warranty claims. *See Rathmann v. Ford Motor Co.*, 2023 WL 6150270, at *2 (W.D. Tex. Aug. 25), *R. & R. adopted*, 2023 WL 6150787 (W.D. Tex. Sept. 20, 2023); *Tucker v. Ford Motor Co.*, 2023 WL 2662887, at *11 (E.D. Mo. Mar. 28, 2023). This Court agrees. Accordingly, the plain meaning of the waiver encompasses claims arising from implied warranties.

### C.    Unconscionability

Finally, plaintiffs contend that denying class certification is premature, because they intend to challenge the class waiver as unconscionable. (Dkt. No. 155, at 13-14). Although ultimately a question of law, unconscionability is a fact-intensive determination. *See Besteman v. Pitcock*, 272 S.W.3d 777, 788 (Tex. App. 2008) (Texas); *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 120 (Pa. 2007) (Pennsylvania); *De La Torre v. CashCall, Inc.*, 422 P.3d 1004, 1014-15 (Cal. 2018) (California); *Miller v. Cotter*, 448 Mass. 671, 680 (2007) (Massachusetts). Moreover, each state's unconscionability statute requires that courts afford parties an opportunity to present evidence of unconscionability. (Dkt. No 155, at 14-15 (citing Mass. Gen. Laws ch. 106, § 2-302(2); Tex. Bus. Code § 2.302(b); Cal. Civ. Code § 1670.5(b); 13 Pa. Cons. Stats. § 2302(b)). Plaintiffs contend that they should be entitled to further discovery to support their

11

unconscionability defense.  (Dkt. No. 155, at 14-15).  Specifically, they raise the possibility that defendant did not provide the warranty booklet containing the waiver to customers prior to sale. (*Id.* at 15-16).

Defendant counters that discovery is unnecessary.  (Dkt. No. 158, at 8).  According to defendant, each of the relevant states requires plaintiffs to prove *both* substantive (unreasonable or oppressive terms) *and* procedural (lack of meaningful choice or unfair surprise) unconscionability.  (Dkt. No. 153, at 12-18).  It contends that plaintiffs have only raised questions of procedural unconscionability and therefore concede the essential question of substantive unconscionability.  (Dkt. No. 158, at 8).  Defendant further challenges why plaintiffs have not submitted evidence of procedural unconscionability that is within their control.  (*Id.*). In the alternative, it contends that unconscionability is an individualized inquiry that must be conducted on class member-by-class member basis and thus precludes findings of commonality and predominance.  (Dkt. No. No. 153, at 18-20).

The Court agrees with plaintiffs that the unconscionability issue is not yet ripe.  To begin, some Texas appellate courts have stated that Texas law requires "*both* procedural and substantive unconscionability."  *E.g.*, *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005).  However, the Texas Supreme Court has suggested that a contract may be unenforceable under *either* procedural *or* substantive unconscionability.  *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) ("Arbitration agreements may be either substantively or procedurally unconscionable, or both."); *In re Poly-Am., L.P.*, 262 S.W.3d 337, 361 (Tex. 2008) (finding that provisions of an arbitration agreement were substantively unconscionable and therefore unenforceable without analyzing procedural unconscionability).  Thus, under Texas law, it appears that plaintiffs can succeed even if they

only establish procedural unconscionability.  Although Texas courts do not generally find class-action waivers unconscionable, *see Ranzy v. Extra Cash of Tex., Inc.*, 2011 WL 13257274, at *7 (S.D. Tex. Oct. 14, 2011), it does not follow that plaintiffs could not possibly present a set of facts in which the waiver is procedurally unconscionable.

Pennsylvania, California, and Massachusetts require proof of both substantive and procedural unconscionability.  *Salley*, 925 A.2d at 119 (Pennsylvania); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) (citing, *inter alia*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)) (California); *Machado v. System4 LLC*, 471 Mass. 204, 218 (2015) (Massachusetts).  Pennsylvania and California adopt a sliding-scale approach in which a low degree of substantive unconscionability may be offset by a high degree of procedural unconscionability.  *Salley*, 925 A.2d at 125 n.12; *Shroyer*, 498 F.3d at 981-82.  In Massachusetts, "courts apply a 'lower threshold for finding unconscionability' to contracts of adhesion." *Toth v. Everly Well, Inc.*, 118 F.4th 403, 415 (1st Cir. 2024) (quoting *Good v. Uber Techs., Inc.*, 494 Mass. 116, 144 n.41 (2024)).  Thus, in all three states, plaintiffs may be able to establish unconscionability with only some degree of substantive unconscionability.

Under Pennsylvania, California, and Massachusetts law, class-action waivers may be substantively unconscionable or contrary to public policy when they effectively deny plaintiffs a remedy and exculpate the drafter.  *See Quilloin0 v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) (citing *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 883-84 (Pa. Super. Ct. 2006)) (Pennsylvania); *Discover Bank v. Superior Ct.*, 113 P.3d 1100, 1108 (Cal. 2005), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (California); *Feeney v. Dell Inc.*, 454 Mass. 192, 202 (2009), *abrogated on other grounds by*

13

*AT&T Mobility LLC*, 563 U.S. 333 (Massachusetts).  In the cited cases, the courts found that, among other factors, the small value of individual damages may effectively deny plaintiffs a remedy absent a class action.  *See Quilloin*, 673 F.3d at 232; *Discover Bank*, 113 P.3d at 1110; *Feeney v. Dell Inc.*, 454 Mass. at 202.  Defendant here alleges that the relatively large amount of damages incurred by the individual plaintiffs distinguishes this case.  (Dkt. No. 153, at 13-18).  There are, however, "most certainly [other] circumstances in which a class action waiver is unconscionable."  *Shroyer*, 498 F.3d at 983.

Ultimately, whether the class-action waiver is unconscionable is a fact-specific analysis.  It is true that some of that evidence is within plaintiffs' control, and they failed to present it in opposition to the motion.  Nonetheless, without all the facts before it, the Court cannot say whether the unconscionability determination must be made on an individualized basis, rather than circumstances common to the class.  *See, e.g.*, *Shroyer*, 498 F.3d at 983-84 (finding unconscionability based upon circumstances common to the class).

That leaves the question of when the appropriate time is to address the validity of the class-action waiver.  The Fourth Circuit has held that "class certification [is] precisely the stage . . . at which a district court should consider the effect of a class-action waiver."  *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 131 (4th Cir. 2025) (citing *In re Marriott Int'l, Inc.*, 78 F.4th 677, 687 (4th Cir. 2023)).  The issue must be resolved prior to class certification; otherwise, "the defendant is denied the benefit of its contractual bargain."  *In re Marriott Int'l, Inc.*, 78 F.4th at 687.

This Court agrees that resolution of the issue must precede class certification.  For present purposes, however, given the limited factual record, the Court will merely deny

14

defendant's motion without prejudice to its renewal.  The question of how and when that issue should be resolved will be addressed at a later stage of this proceeding.

**V.      Conclusion**

For the foregoing reasons, defendant Ford Motor Company's motion for partial denial of class certification is DENIED without prejudice.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  March 25, 2026                 United States District Judge