UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL MCCABE, et al., Plaintiffs, v. FORD MOTOR COMPANY, Defendant. | Civil Action No. 23-10829-FDS (Consolidated Action) |

ORDER ON PLAINTIFFS' MOTION FOR RULE 37(e)
CURATIVE MEASURES, AND/OR FOR TARGETED DISCOVERY
[Docket Nos. 248, 275]

October 5, 2026

Boal, M.J.

This is a consolidated set of putative class actions alleging defects in the transmissions of certain Ford vehicles. Plaintiffs argue that Ford failed to preserve the ESI of Craig Renneker, Ford's Chief Engineer for New Transmissions during the relevant time period. They have filed a motion for curative measures concerning the alleged spoliation and/or for discovery concerning Ford's preservation efforts. Docket Nos. 248, 275.[1] For the following reasons, this Court denies the motion.

## I. RELEVANT BACKGROUND

### A. The Allegations In This Action

Plaintiffs are consumers who purchased or leased vehicles designed and manufactured by

[1] Judge Saylor referred the original motion to the undersigned on August 20, 2026. Docket No. 257.

Ford equipped with a 10R80 10-speed transmission. Amended Consolidated Complaint (Docket No. 104) ("ACC") at ¶¶ 35-73. Plaintiffs represent putative classes of consumers in nine states: Massachusetts, Florida, Alabama, Illinois, Texas, New York, California, Oklahoma, and Pennsylvania. They allege that the transmission "can shift harshly and erratically, causing the vehicle to jerk, lunge, clunk, and hesitate between gears." ACC at ¶ 4. They also allege that "[s]ome consumers have reported that their Vehicle loses power while accelerating, including onto a freeway or through an intersection, when the Transmission failed to shift up or down." Id. at ¶ 132.

B. Other Litigation

On July 26, 2019, the same counsel who commenced this action filed a single vehicle breach of warranty action against Ford in the Northern District of Illinois. See O'Connor v. Ford Motor Co., No. 1:19-cv-05045 (N.D. Ill.) (the "O'Connor Action"). On August 8, 2019, the plaintiff in that case filed an amended complaint seeking to convert it into a putative class action alleging that the 10R80 automatic transmission equipped in 2017-2020 Ford F-150 pickup trucks is defective. Docket No. 271 at 7.[2]

On August 11, 2023, different counsel filed a putative class action concerning the 10R80 transmission in the Eastern District of Virginia. See Dolan v. Ford Motor Company, No. 3:23-cv-00512 (E.D. Va.) (the "Dolan Action"). On May 30, 2024, Attorney Mitchell Breit, who also represents Plaintiffs in this action, sought pro hac vice admission to represent the plaintiffs in the Dolan Action, which was granted on July 1, 2024. Docket No. 271 at 7.

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

On April 1, 2025, the Dolan plaintiffs filed a Motion for Adverse Inferences and Other Injunctive Relief, which sought spoliation sanctions regarding Renneker's ESI. See Dolan Action at ECF Nos. 362 & 363. Ford responded to that motion on April 25, 2025. Id. at ECF 387. That motion remains pending.

C. Craig Renneker

According to Plaintiffs, Ford began the 10R80 as a clean-sheet transmission design as early as 2013, and Renneker remained its chief engineer through the transmission's launch in the 2017 model year and until his departure from Ford at end of December 2018. Docket No. 276-1 at 5-6. Plaintiffs maintain that Renneker was "the subject matter expert," "the chief engineer of the new product program, and "the boss of the manager . . . leading the joint development." Id. at 4.

In discovery, Plaintiffs obtained a September 2016 email from Renneker to his supervisor Ram Krishnaswami and successor Adam Gryglak titled "Thoughts from post SJEC." Id. at 7. Renneker stated that Ford "botched the seal ring issue," identified the ITC as a problem, and stated that Ford "fell behind in calibration and likely hid the seal issues." Id. at 7. It appears, however, that many of Renneker's emails have been deleted. Plaintiffs maintain that such emails are crucial to their claims.

D. Ford's Document Preservation Policies

Ford's document retention policy, dated November 2018, states that:

> (1) Electronic records that document the completion of an action, transaction, decision or other significant activity should be designated as Official Records and stored in an electronic repository accessible by others (not personal hard drives) with a specific document retention period;
>
> (2) Non-official records, which Ford refers to as "Transient Records," may be deleted at any time and should not be kept longer than three years, unless subject to a suspension order/ legal hold;

> (3) Most e-mails are Transient Records, not Official Records; and
>
> (4) An employee transfers necessary records to appropriate custodians when they leave the company.

Docket No. 271 at 10. According to Ford, at the time that Renneker retired, and in accordance with Ford's document retention policies, his "Official Records" would have been stored in appropriate electronic repositories and his "Transient Records" not subject to a suspension order/legal hold (including emails and documents on his personal hard drive) were not maintained. Id. at 11.

E. Relevant Procedural Background

This case was filed on April 18, 2023 and formal discovery began in May 2024. See Docket No. 243 at 5. In May 2024, Plaintiffs served their first set of requests for production. Docket No. 271 at 8. Ford produced approximately 103,000 documents between May and August 2024. Id. On August 7, 2024, Plaintiffs served a letter on Ford's counsel seeking clarification regarding whether Ford was withholding documents. See id. at 9. Ford maintains that for the next nearly two years Plaintiffs took no further action. Id.

On April 3, 2026, Judge Saylor set a fact discovery deadline of August 12, 2026. See Docket No. 181. Two months later, on June 4, 2026, Plaintiffs served a second set of requests for production, a first set of interrogatories, and a notice of Rule 30(b)(6) deposition. Docket No. 271 at 9. None sought any information about Renneker. On June 12, 2026, Plaintiffs served 15 deposition notices for current and former Ford employees and stated an intent to depose 11 other individuals. Id. Renneker was not among the 26 individuals that Plaintiffs listed in their notices or letters. Id. Plaintiffs also stated that they intended to rely upon prior testimony from the 60 depositions taken in the O'Connor and Dolan Actions. Id. Renneker was also not one of those

prior deponents. Id.

On August 4, 2026, Plaintiffs filed a motion to amend the scheduling order, including extending the fact discovery deadline to October 13, 2026. Docket No. 241. At a status conference the following day, Judge Saylor stated that he was "reluctant to extend the timetable, given the age of this case and the amount of time we've already had for discovery, even if . . . a lot of discovery has piled up at the end." Docket No. 251 at 5.

On August 12, 2026,[3] Plaintiffs filed the instant motion. Docket No. 248.[4] The certificate of compliance with Local Rule 7.1, stated that Plaintiffs attempted in good faith to resolve or narrow the issues raised by the motion by (1) their prior meet and confer in connection with the spoliation motion filed in the Dolan Action in April 2025; (2) Plaintiffs' proposed stipulation to extend discovery; and (3) an email to Ford's counsel on the day their motion was filed asking if Ford opposed the motion. See Docket No. 275 at 3-4. Ford filed an opposition on August 26, 2026. Docket No. 271. This Court heard oral argument on September 30, 2026.

## II. STANDARD OF REVIEW

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Rivera v. Sam's Club Humacao, 386 F. Supp. 3d 188, 200 (D.P.R. 2018) (citations omitted). To determine whether spoliation has occurred, the court "must first determine whether an act of destruction occurred" which requires a finding of four elements: "1) an act of destruction; 2)

[3] Judge did Saylor allow some depositions to be taken beyond the August 12, 2026 deadline, but the last day of fact discovery remained August 12, 2026. See Docket No. 287 at 8-9.

[4] The motion was redacted. Plaintiffs subsequently obtained leave of court to file the unredacted motion under seal. See Docket Nos. 258, 278, 283. They refiled the motion on August 27, 2026. Docket No. 275.

discoverability of the evidence; 3) intent to destroy the evidence; and 4) occurrence of the act after commencement of litigation or, if before, at a time when the party was on notice that the evidence might be relevant to potential litigation." Gordon v. DreamWorks Animation SKG, Inc., 935 F.Supp.2d 306, 313 (D. Mass. 2013) (citation omitted).

Spoliation of electronically stored information ("ESI") is governed by Rule 37(e) of the Federal Rules of Civil Procedure.[5] Rule 37(e) provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Thus, a party claiming spoliation of ESI must establish first that ESI has been lost and is not available in any other location. Wai Feng Trading Co. Ltd. v. Quick Fitting, Inc., No. 13-56WES, 2019 WL 118412, at *5 (D.R.I. Jan. 7, 2019) (citations omitted). "Second, the court must consider whether and when a duty to preserve the lost ESI arose; this requires consideration of when the party in possession of the ESI was on notice not only of the litigation but also that the ESI would be relevant to the litigation." Id. (citations omitted).

Further, Rule 37(e) applies only if the party in the possession of the lost ESI failed to take "reasonable steps" to preserve the information and the information could not have been restored or replaced through additional discovery. Id. "In applying the requirement of 'reasonable steps,' courts must be mindful that 'perfection in preserving all relevant electronically stored

[5] Prior to the 2015 amendments to the Federal Rules of Civil Procedure, a court could impose sanctions for spoliation of ESI based on its inherent authority. See Boudreau v. Shaw's Supermarkets, Inc., No. 2:17-cv-259-DBH, 2019 WL 3242051, at *1 (D. Me. Jul. 18, 2019). Since 2015, Rule 37(e) "forecloses reliance on inherent authority or state law" to determine when sanctions should be imposed for spoliation of ESI. Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e). However, "[w]hether and when there is a duty to preserve remains a decision based on 'a common-law duty' 'when litigation is reasonably foreseeable,' and the Rule 'does not attempt to create a new duty to preserve.'" Boudreau, 2019 WL 3242051, at *1, n. 4 (quoting Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e)).

information is often impossible,' as well as that this factor requires consideration of the litigation sophistication of the party in possession of the ESI and the proportionality to the litigation of costly and aggressive preservation efforts." Id. (citation omitted).

If the movant establishes that a party failed to take reasonable steps to preserve ESI after a duty to preserve arose and that the information cannot be restored or replaced through additional discovery, the court's next inquiry is whether the loss of the ESI has caused prejudice or whether the party in possession acted "with the intent to deprive another party of the information's use in the litigation." Id. at *6 (quoting Fed. R. Civ. P. 37(e)(1-2)).[6] That finding governs the types of sanctions available for spoliation of ESI.

Upon a finding of prejudice, the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Such measures may include "prohibiting the party that failed to preserve from putting on certain evidence, permitting the parties to present evidence or argument to the jury regarding the loss of ESI or giving the jury instructions to assist in the evaluation of such evidence or argument." Wai Feng Trading Co. Ltd., 2019 WL 118412, at *6 (citing Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e)).

Plaintiffs, as the moving parties, bear the burden of proving the threshold requirements that relevant evidence has been lost and cannot be replaced, that it should have been preserved, and that it was not preserved because Ford failed to take reasonable steps to preserve it. Postle v. SilkRoad Tech., Inc., No. 18-cv-224-JL, 2019 WL 692944, at *1 (D.N.H. Feb. 19, 2019). "The rule does not," however, "place a burden of proving or disproving prejudice on one party or the other." Adv. Comm. Note to 2015 Amendments, Fed. R. Civ. P. 37(e).

[6] At oral argument, the Plaintiffs stated that they were proceeding under Rule 37(e)(1) only, which applies upon a finding of prejudice.

## III. DISCUSSION

### A. Local Rules 7.1 And 37.1

Ford argues that the Plaintiffs' motion should be denied because they failed to meet and confer with Ford in violation of Local Rules 7.1 and 37.1. Docket No. 271 at 14. Local Rule 7.1 provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." LR 7.1(a)(2). Similarly, Local Rule 37.1 requires counsel to confer prior to filing a discovery motion. LR 37.1(a). While the Plaintiffs' motion contains a certification of compliance with Local Rule 7.1, Ford argues that Plaintiffs' attempt to confer was deficient. Docket No. 271 at 4.

Rules requiring counsel to meet and confer prior to filing motions "foster[] discussion between the parties about matters before they come before the court, and . . . preserve[] scarce judicial resources." Sun Capital Partners III, LP v. New England Teamsters and Trucking Indus. Pension Fund, 329 F.R.D. 102, 105 (D. Mass. 2018) (citation omitted). Such conferences are not an empty exercise. Id. This Court agrees that Plaintiffs' meet and confer efforts were insufficient here. Nevertheless, summary denial of the motion based on failure to meet and confer is not warranted. Among other things, it does not appear that a conference pursuant to the rules "would have changed the parties' fundamental positions." Id. In addition, this Court prefers to resolve disputes on the merits. Accordingly, this Court declines to deny the motion solely on this basis.

### B. Plaintiffs Have Not Shown That Ford Failed To Take Reasonable Steps To Preserve Evidence

"The duty to preserve evidence arises when 'litigation is reasonably anticipated.'" Gordon, 935 F.Supp.2d at 314. "Before an inference of spoliation may be drawn, its proponent must show at a bare minimum that the opposing party had notice of a potential claim and of the

relevance to that claim of the destroyed evidence." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012) (citation omitted). Plaintiffs argue that Ford's duty to preserve Renneker's documents arose before his December 2018 departure. Docket No. 276-1 at 14. Plaintiffs maintain that Ford knew of significant shift-quality problems in the 10R80 before the transmission ever reached the public: an internal Ford document dated November 2016 records dozens of issues with harsh, erratic, and hesitating shifting in the 10R80. Id. at 15. By early 2017, Ford was already issuing refunds and replacing 10R80-equipped vehicles under state lemon-law statutes for shift-quality defects. Id.

This Court disagrees that these facts are sufficient to trigger a duty to preserve. As recognized by the Advisory Committee notes to the 2015 amendments to Rule 37(e):

> A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to the blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.

Adv. Comm. Note to 2015 Amendment, Fed. R. Civ. P. 37(e). Rather, this Court finds that Ford's duty to preserve relevant ESI arose, at the earliest, on August 2019 when the complaint in the O'Connor Action was amended to include class action claims alleging a widespread defect in the 1080R transmission.

Ford points out that, at that time, Renneker had not been an employee of Ford for eight months. See Docket No. 271 at 9. Ford, however, has not explained when Renneker's ESI was deleted, who deleted it, and under what circumstances.[7] Nevertheless, the question whether Ford

[7] At oral argument, Ford's counsel represented that it does not know when Renneker's emails were deleted but that, in the ordinary course, it deletes departing employees' ESI within 30 to 60 days of the employee's departure.

failed to preserve evidence involves not only determination of when the duty to preserve attaches but also *what* evidence must be preserved. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Once the duty to preserve arose, Ford was not required to preserve "every shred of paper, every e-mail or electronic document, and every back up tape." Id. at 217. "Such a rule would cripple large corporations . . . that are almost always involved in litigation." Id. Rather, Ford had "a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Id. In terms of potential custodians, the duty to preserve "extends to those employees likely to have relevant information—the 'key players' in the case." Id. at 218.

At oral argument, Ford's counsel explained that Renneker was not identified as a key player and, as such, was not selected as a custodian by Ford in this case or the Dolan Action. Rather, the Dolan plaintiffs identified him as a custodian in September 2024, at which time Ford searched for relevant documents from him. See also Docket No. 271 at 9. Renneker was not a custodian in this case. This Court also notes that, despite Plaintiffs' arguments that Renneker is a crucial witness, they never asked for his deposition and never attempted to serve him with a subpoena. They have not sufficiently explained their failure to seek discovery from him directly particularly given their view that he was such a vital witness for their case. Under the circumstances, therefore, they have failed to show that Ford breached a duty to preserve his emails.

### C. Plaintiffs Have Not Shown That The Information Contained In Renneker's Email Is Lost And Not Available From Other Sources

Plaintiffs argue that the information contained in Renneker's email is lost and is not available from other sources. However, Ford represents that many emails from Renneker were

produced from other custodians' documents and company shared-drive locations. Docket No. 271 at 15. Plaintiffs nevertheless argue that Ford's substitute-custodian theory is foreclosed by Judge Saylor's decision in Janz Corp. v. Philips North Am. LLC, 793 F.Supp.3d 380 (D. Mass. 2025). Specifically, they point to the statement that "as a general matter, a party does not get to select which relevant information to preserve." Id. at 394. That statement, however, was made in the context of a prejudice analysis, which is separate from the determination of whether the information is available from other sources and therefore not lost.

Plaintiffs also point to the fact that Renneker's responsibilities were not absorbed cleanly by a single successor when he departed and therefore no single individual can capture the information that Plaintiffs seek. Docket No. 276-1 at 16-17. Plaintiffs' arguments about Renneker's position being split after his retirement, however, are irrelevant where the information allegedly lost is from 2014-2018, prior to Renneker's retirement. Ford is not arguing that documents from Renneker's successors are adequate; rather, Ford maintains that documents from custodians in Renneker's supervisory chain, as well as the collective productions from 18 other custodians and shared sources are sufficient to duplicate what might have been in Renneker's email when he worked at Ford. Accordingly, this Court also finds that Plaintiffs have not shown that the information they seek is not available from other sources.

D. Request For Discovery

To the extent that Plaintiffs request discovery regarding preservation issues, that request comes too late. Plaintiffs have been aware of this issue since at least April 2025, when the Plaintiffs in the Dolan Action filed a substantially similar motion regarding Renneker's ESI. They, however, failed to request any discovery regarding preservation issues despite being aware of it since at least April 2025. Accordingly, this Court denies Plaintiffs' request for discovery.

## IV. ORDER

For the foregoing reasons, this Court denies the Plaintiffs' motion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE